ELLA KNAPP v. THE BROTHERHOOD OF AMERICAN YEOMEN,
Appellant.

**Pleadings:** AMENDMENT. Where, as in this case, the defendant was permitted to amend his answer to conform to the decision of the question on appeal, there was no abuse of discretion in permitting plaintiff to amend his reply after a subsequent appeal, in · a manner not inconsistent. with any previous pleading, but merely asserting new matter by way of admission and avoidance in response to new matter set up in defendant's amendment.

**Evidence:** ADMISSIBILITY OF EVIDENCE TAKEN ON A FORMER TRIAL. Where a litigant asserts and supports a fact by calling witnesses thereto, their evidence may be introduced on a subsequent trial as in the nature of admissions, but the evidence must relate to some fact which the party offering the same is entitled to prove. In this action the question was whether plaintiff, an insured, had become intemperate or had been intoxicated within a certain time, and it is held that the evidence of his reputation with respect thereto was not admissible as bearing on these issues.

**Appeal:** VERDICT UPON CONFLICTING EVIDENCE. Where the evidence respecting an issue is conflicting the finding of the jury will not be disturbed on appeal, although the court itself might have reached a different conclusion.

*Appeal from Linn District Court.*—HON. F. O. ELLISON,
Judge.

TUESDAY, MAY 10, 1910.

'ACTION on a certificate of insurance resulted in a judgment as prayed. The defendant appeals.—*Affirmed.*

*Edgar C. Corry* and *Dawley & Wheeler,* for appellant.

*John Leonard* and *S. K. Tracy,* for appellee.

LADD, J.—A certificate of insurance was issued by defendant to Frank Knapp, June 13, 1901, and he. died February 5, 1902. The plaintiff is the beneficiary named, and in this action, begun August 29, 1902, demands the indemnity stipulated. The cause has been here twice before. On the first appeal, defendant's contention that error had been committed in not directing a verdict in its favor for that the claim had not been submitted to arbitration was denied, on the ground that no such issue had been raised in the pleadings. 128 Iowa, 566. Upon remand to the district court, October 8, 1906, defendant amended its answer by averring the omission of plaintiff to submit the liability of defendant to arbitration as required by the certificate of insurance. To this plaintiff replied by general denial, and alleging that defendant had not demanded arbitration or appointed arbitrators, and that the provision exacting arbitration was illegal. On the second appeal, this provision was held to be valid, and error to have been committed in not directing a verdict for defendant, because of there having been no proof that plaintiff complied with the condition of the certificate exacting arbitration as a condition precedent to the maintenance of the action or waiver thereof, which must have been pleaded if relied upon. 139 Iowa, 136. When the cause was again remanded to the district court, plaintiff, on September 15, 1908, filed an amendment to her petition, alleging that in June, 1902, she requested defendant to arbitrate her claim as by the certificate provided, and that this it failed and refused to do, and thereby waived the right to arbitration. By agreement, this amendment was treated as an amendment to the reply, and defendant moved that it be stricken because filed too late, and the ruling by which such motion was denied is the alleged error argued.

I. It is apparent from the above recital that neither party is in a situation to chide the other because of dila-

tory practice in making up the issues or for presenting

**1. PLEADINGS: amendment.** them by piecemeal. If plaintiff did not ascertain the necessity of meeting the plea of failure to arbitrate by alleging waiver until more than two years after such plea had been interposed, and then on appeal, she did quite as well as defendant, who learned in the same way that omission to arbitrate, to be available as a defense, must be pleaded, and did not amend its answer by alleging such omission until more than four years after the action was begun. While permission to plead omission to arbitrate so long after the action had been commenced might well have been denied, this was not done, and in view thereof it ought not to be said, speaking by comparison, that the court abused its discretion in being equally lenient with the opposite party. The amendment to the reply was not inconsistent with any previous pleading. It merely asserted new matter by way of admission and avoidance in response to new matter set up in an amendment to the answer to avoid a trial on the issues previously formulated. The latter having been permitted, we are inclined to the opinion that it was but fair to allow the former to remain on file. Because of the circumstances mentioned, *Zalesky v. Ins. Co.,* 114 Iowa, 516, and *Ingold v. Symonds,* 134 Iowa, 206, are not controlling. There was no error in overruling the motion.

II. In his application for insurance, deceased represented that he used beer occasionally, and had not been intoxicated during the five years last past, and stipulated that in event of the falsity of any answer,

**2. EVIDENCE: admissibility of evidence taken on a former trial.** or of his "death while intoxicated, or due or traceable to the intemperate use of liquors," no liability should attach. The certificate also provided that it should be void if deceased "shall become intemperate in the use of intoxicating liquors . . . so as to impair his health or . . . his application or any part thereof shall be found to be untrue."

One of the defenses interposed was that these representations were false, another that deceased had become intemperate in the use of intoxicating liquors so as to impair his health, and that this was both the direct and indirect cause of his death, and still another that he died while intoxicated. The plaintiff, in addition to denying these, also replied that whatever habits of intoxication or drinking the deceased had were generally known in the community, and where the persons receiving his application resided, and that with full knowledge of his habits defendant received his assessments as they fell due, and therefore might not set up this defense. In support of this reply, plaintiff on the first trial called six witnesses, who testified concerning deceased's reputation with respect to said habits for some years prior to the time of his death. This evidence was received over objection, but on appeal the ruling was held to have been erroneous. This was on the ground that section 1811 of the Code was not applicable to associations such as the defendant. That section is to the effect that liability of an insurance company can not be avoided on the ground of intemperate habits of the assured, where such habits are generally known in the community where insurer's agent resided, if the company thereafter continued receiving premiums falling due. On the last trial defendant offered the testimony of these witnesses, given on the former trial; but, on objection as incompetent, irrelevant, and immaterial, it was excluded. It may be conceded that when a litigant asserts on a trial a fact by calling witnesses to prove the same, their testimony thereto may be introduced on a subsequent trial as in the nature of admissions if material to the issues. *Richards v. Morgan,* 10 Jur. (N. S.) 559; *Bageard v. Consolidated Traction Co.,* 64 N. J. Law, 316 (45 Atl. 620, 49 L. R. A. 424, 81 Am. St. Rep. 498); *Becker v. Philadelphia,* 217 Pa. 344 (66 Atl. 564); 2 Wigmore on Evidence, section 1075. But it is manifest that the fact must be one which the party

offering such testimony would be entitled to prove.   The issue was whether the insured had become intemperate, or had been intoxicated within the five years last past, and evidence of his reputation with respect thereto was not admissible as bearing on these issues.   This being so, evidence in the nature of admissions as to his reputation was rightly excluded.

III.   Whether the assured was intoxicated when killed by the car was for the jury to determine.   If Mrs. Fowler thought him drunk between five and six o'clock in the afternoon, and McKeman near seven o'clock, the two Blaines were certain he had not drunk intoxicating liquors prior to five o'clock, and two or three hours after his death the coroner and Dr. Ruml found no indications on the body of his having been drinking.   Even though McLeod had drunk whisky with him at Cedar Rapids prior to making the application, his sole intoxicating beverage at that time may have been beer, as he represented.   Though a number of witnesses testified to having seen him intoxicated during the five years immediately previous to receiving the certificate, and that he had become intemperate, others who had been acquainted with him many years, with reasonable opportunity to know, were not aware of the excessive use of intoxicants by him.

3. APPEAL: verdict upon conflicting evidence.

All these issues were fairly for the jury; and, though we might not have reached the conclusion it did, we are not disposed to disturb the verdict.—*Affirmed.*